IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Crim. Case No.:  SAG-13-0564 |
| | * | |
| LANGSTON JACKSON, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In March, 2014, Defendant Langston Jackson pled guilty to one count of possession with intent to distribute cocaine.  ECF 91.  United States District Judge Catherine C. Blake accepted the parties' plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and imposed their agreed sentence of 151 months of incarceration, to be followed by a period of three (3) years of supervised release.  ECF 184.  On March 9, 2021, Mr. Jackson filed a *pro se* Motion for Compassionate Release.  ECF 301.  The Government filed an opposition, ECF 311, and Mr. Jackson filed a reply.  ECF 314.[1]  This Court has carefully reviewed those submissions and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons that follow, Mr. Jackson's Motion will be denied.

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction."  *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239–41 (2018).  While previously any motion for

---

[1] Mr. Jackson correctly notes that the Government's opposition was filed after the deadline set by the Court.  The remedy for that tardiness, however, would not be the automatic granting of Mr. Jackson's compassionate release motion.  This Court would still have to review Mr. Jackson's motion to see whether he is entitled to the requested relief.  For the reasons set forth herein, he is not, whether or not the Court considers the Government's belated opposition.

compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." *Id.* Before a defendant's motion can be filed with the Court, however, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* § 3582(c)(1)(A). Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i); *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

The government concedes that Mr. Jackson adequately exhausted his administrative remedies. *See* ECF 311 at 3 n.2. Thus, this Court turns to the three-step inquiry enumerated under § 3582(c)(1)(A), beginning with whether Mr. Jackson has established any "extraordinary and compelling reason[]" warranting further consideration of compassionate release. This Court has authority to consider any "extraordinary and compelling reason" for release that a defendant might raise, as well as the impact of a combination or totality of the circumstances and factors presented by a defendant. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *see also United States v. Harris*, No. 21-6781, 2022 WL 636627, at *1 (4th Cir. Mar. 4, 2022) (unpublished).

Here, Mr. Jackson cites three factors: (1) "an unwarranted disparity between career crack cocaine offenders and career powder cocaine offenders," (2) the fact that the pandemic created

2

harsher conditions of incarceration for inmates, and (3) his history of positive institutional behavior. ECF 301 at 1-2. Each is addressed below.

Mr. Jackson's argument about a sentencing disparity appears misplaced. He is correct that he would have had a lower sentencing guideline range if he had not been a career offender. He is also correct that the passage of the First Step Act allowed many inmates convicted of crack cocaine offenses, including those who were career offenders, to seek and obtain sentencing reductions. Persons convicted of powder cocaine offenses, including career offenders, were ineligible for those same reductions. But those facts do not, as Mr. Jackson suggests, *create* a disparity between career offenders convicted of crack cocaine offenses and those convicted of powder cocaine offenses. Instead, they *eliminate* the disparity – because the crack cocaine offenders had received higher sentences than similarly situated powder cocaine offenders in the first place, reduction of those crack cocaine sentences simply puts the two groups of offenders closer to parity then they had been previously.[2]

Turning to Mr. Jackson's second argument, this Court considers COVID-19 related conditions of confinement to be of minimal import for purposes of establishing an extraordinary and compelling reason for compassionate release. Unfortunately, all of society experienced significant imposition as a result of the pandemic, including the inability to participate in many desirable activities. This Court does not minimize the increased hardship suffered by incarcerated persons, who already experience significant restrictions on their liberty and who were at greater

---

[2] This Court notes that the indictment in this case charged a conspiracy to distribute multiple controlled dangerous substances, including cocaine base. ECF 9. Mr. Jackson pled guilty to a superseding information charging only powder cocaine, presumably to avail himself of the more favorable sentencing standards for powder cocaine and allow his attorney to negotiate a more favorable agreed sentence. ECF 87. In other words, had he pled guilty to possession with intent to distribute the cocaine base instead, he may now be eligible for a sentencing reduction, but his original sentence would have been far greater.

health risk because of their collective living situation.  Mr. Jackson cites several of those hardships, including the lack of any constructive programming options during the pandemic period, restricted movements throughout the prison facility, and increased difficulties in obtaining medical care.  But those hardships were experienced universally by all incarcerated inmates and were not unique or extraordinary to Mr. Jackson.  *See, e.g.*, *United States v. Murry*, 538 F.Supp.3d 615, 619 n.2 (E.D. Va. 2021) (same); *United States v. Burks*, No. 3:14-CR-208-MOC-1, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021) (same).  A finding that those conditions were extraordinary and compelling would affect every person incarcerated during the pandemic.

Finally, Mr. Jackson cites his history of positive institutional behavior, noting that he has availed himself of many educational opportunities in the BOP, is working a job, has developed long-range goals, and has no disciplinary record during his six years in federal prison.[3]  This Court commends Mr. Jackson for the positive steps he has taken to turn his life around.  Even so, the law enacted by Congress unequivocally precludes this Court from concluding that Mr. Jackson's rehabilitation, in isolation, is an extraordinary and compelling reason warranting further consideration of a reduction in sentence.  *See* 28 U.S.C. § 994(t) ("[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.").  Although not sufficient in itself, however, the Fourth Circuit has clarified that a defendant's "successful rehabilitation efforts can be considered as 'one among other factors' establishing extraordinary and compelling reasons for release." *Harris*, No. 21-6781, 2022 WL 636627, at *1 (4th Cir. Mar. 4, 2022) (quoting *McCoy*, 981 F.3d at 286 n.9).  The question then, becomes whether Mr. Jackson has presented some other factor, circumstance, or combination of circumstances which, when considered in totality with his

---

[3] Mr. Jackson served a substantial portion of his federal sentence in state custody as a result of his partially concurrent state sentence, so he came into federal custody many years after his federal conviction and sentence.

rehabilitation, amounts to an extraordinary and compelling reason.  In this Court's view, he did not.  For the reasons described above, Mr. Jackson's disparity argument lacks merit, and his COVID-19 argument adds very minimally to the analysis because the conditions he experienced were universal.  Even when combined with his rehabilitation, then, neither of those conditions amounts to an "extraordinary and compelling reason[]" justifying further consideration of compassionate release.  This Court therefore does not proceed to the remaining stages of the analysis of whether such release is appropriate.

      A separate Order denying Mr. Jackson's motion, ECF 301, follows.


Dated: October 31, 2022

                                                                /s/
                                                Stephanie A. Gallagher
                                                United States District Judge